**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Ray Nino,**<br>Petitioner<br>-vs-<br>**Charles L. Ryan, et al.,**<br>Respondents | CV-09-0133-PHX-JAT (JRI)<br><br>**REPORT & RECOMMENDATION**<br>**On Petition for Writ of Habeas Corpus**<br>**Pursuant to 28 U.S.C. § 2254** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on January 21, 2009 (#1), asserting: (1) speedy trial violations; (2) prosecutorial misconduct through delay for tactical advantage; and (3) ineffective assistance of counsel at trial on evidentiary matters. On June 17, 2009, Respondents filed their Response (#12). Petitioner filed a Reply on July 14, 2009 (#13).

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals described the factual background as follows:

> According to the testimony at trial, Nino was socializing in the back of an automotive repair shop with five or six: other shop

employees. The men had consumed six or seven thirty-packs of beer beginning at approximately nine o'clock in the morning and continuing throughout the day into the afternoon. Nino and one of the men, Joey Cano, had a brief verbal altercation and Nino got in his vehicle and drove away.

Nino returned to the shop about two hours later. He went to the back of the shop where several of the other men were still gathered, walked up to Cano and shot him in the left side of his head. Nino then walked away, telling the remaining men not to say anything about what had happened. After one of the men moved the victim's body and left, the other two men called 9-1-1, eventually identifying Nino as the shooter.

(Exhibit J, Mem. Dec. at 2-3.) (Exhibits to the Answer, #12, are referenced herein as "Exhibit ___." Exhibits to the Petition, #1, are referenced herein as "Pet. Exhibit ___." Exhibits to the Reply, #13 are referenced herein as "Reply Exhibit ___.")

## B. PROCEEDINGS AT TRIAL

**First Trial** - On May 8, 2002, Petitioner was charged in Maricopa County Superior Court with first degree murder. (Exhibit A, Complaint.)

Petitioner proceeded to trial, but the jury was unable to reach a verdict, and on December 13, 2002, a mistrial was declared and a new trial date set for February 3, 2003. (Exhibit BB, M.E. 12/13/2.) Applying the state rules on speedy trials, the trial court calculated a speedy trial deadline as February 13, 2003. (*Id.*)

**Continuance** - On January 21, 2003, the prosecution filed a Motion to Continue (Exhibit PP), seeking a continuance of a trial date due to counsel's participation in a another matter scheduled for the same date, in which a continuance had been denied. The motion was granted over Petitioner's opposition, the trial court finding that "extraordinary circumstances exist and that a delay is indispensable to the interests of justice." (Exhibit QQ, M.E. 1/29/3.) The matter was set for trial on March 13, 2003. (*Id.*)

At a hearing on March 5, 2003, defense counsel moved for a continuance based upon delays in obtaining translations of the jailhouse letters. (*Id.*) At the hearing on March 7, 2003, that motion was granted, and the matter was set for trial on March 24, 2003. The trial court found that "Defendant has waived time and the Court further finding extraordinary

circumstances exist due to the need to obtain translation of letters." (Exhibit H, Suppl. Brief at Exhibit C, M.E. 3/7/03.)

**Handwriting** - While Petitioner was detained prior to trial, the jail intercepted incriminating letters from Petitioner which included threats against the eyewitnesses. The prosecution sought handwriting exemplars from Petitioner prior to the first trial to attribute the letters to Petitioner. (Exhibit XX, Motion for Taking Physical Evidence.) Petitioner failed to submit the exemplars. (Exhibit RR M.E. 3/5/3.) Following the mistrial, Petitioner agreed to submit a handwriting sample.

At the continuance hearing on January 29, 2003, the state advised the court that the exemplars had not been obtained:

> THE COURT: Okay. Anything else we need to talk about?
> MR. CLEARY [defense counsel]: No.
> MR. LEVY [prosecutor]: No, Your Honor.
> You've already issued your order with regard to handwriting exemplars. I'm embarrassed to say the detective hasn't carried through on it, so there's nothing additional to request.
> THE COURT: Okay. Well, if you're going to do it, have it done timely so we don't come in here and have defense not having the opportunity to prepare for it.
> MR. LEVY: Absolutely. I understand.
> THE COURT: That should have been done the last time.

(Reply Exhibit D, R.T. 1/29/03 at 12. *See also* Exhibit H, Supp. Brief at 3.))

The exemplars were not obtained. However, on February 5, 2003, "Defense counsel stipulated that the letters in question are in Defendant's handwriting." (Exhibit RR, M.E. 3/5/3 at 2. *See also* Reply Exhibit E, Email 2/5/3; Exhibit J, Mem. Dec. at 9.)

Counsel sought to withdraw from the stipulation on the basis that it was conditionally given, but the request was denied. (Exhibit RR, M.E. 3/5/3 at 2; Reply Exhibit 2, R.T. 3/5/03 at 27; Exhibit J, Mem. Dec. at 11.) In addition, the trial court permitted the State to amend its witness list to add witnesses to interpret the letters, which were purportedly in gang slang. (*Id.*; Reply Exhibit F, Motion in Limine.)

Prior to the start of the second trial, the trial court found only one of the letters relevant, ordered the redaction of any references to gangs or the "Mexican Mafia," and

defense counsel stipulated to the admission of the translation without testimony from the interpreter.  (Exhibit Z, Pet.Rev. at Exhibit 3, M.E. 3/24/3.)

**Second Trial** - Petitioner proceeded to trial on March 25, 2003, and was  convicted by the jury of first degree murder.  (Exhibits SS, M.E. 3/25/3; and C, M.E. 4/3/3.)  Petitioner was sentenced on May 7, 2003 to life in prison.  (Exhibit D, Sentence.)

## C.  PROCEEDINGS ON DIRECT APPEAL

**Direct Appeal** - Petitioner filed a notice of appeal, and counsel filed an Opening Brief (Exhibit E) pursuant to *Anders v. California*, 386 U.S. 738 (1967),  asserting an inability to find an issue for appeal.  Petitioner then filed a Supplemental Brief (Exhibit F) asserting claims of speedy trial violations, post-accusation delay, prosecutorial misconduct, and inadmissable evidence.

Speedy Trial - Petitioner argued that at the hearing on January 29, 2003, he was "denied his right to a speedy trial pursuant to Rule 8, Arizona Rules of Criminal Procedure" because that rule required review by the Chief Justice of the Arizona Supreme Court to protect Petitioner's Sixth Amendment Speedy Trial guarantee.  (Exhibit F, Supp. Brief at 3.) He argued that "the delay substantially prejudiced and violated the constitutional right of the Defendant's defense."  (*Id.* at 4.)

The Arizona Court of Appeals ordered counsel to file supplemental briefs on the speedy trial issue.  (Exhibit G, Order 7/29/04.)  Counsel argued that the trial court did not have authority to entertain the prosecutions' motion to continue, based upon Rule 8.4(c), Ariz. R. Crim. P. (requiring certain delays be approved by the chief justice of the Arizona Supreme Court), and that Petitioner was prejudiced because the delay enabled the prosecution to obtain translations of the Petitioner's handwritten letters, and to add witnesses to address the matter.

Post-Accusation Delay - Petitioner argued that on January 29, 2003 the prosecution improperly sought delay of the trial, not because of a scheduling conflict as asserted, but in order to obtain the handwriting exemplars that it had failed to timely pursue.  Petitioner

referenced no federal law or constitutional provisions, but referenced without citation the case *Barker v. Wingo*, 407 U.S. 514, 522 (1972) (factors to find constitutional speedy trial violation). (Exhibit F, Supp. Brief at 5.)

**Decision** - The Arizona Court of Appeals rejected Petitioner's speedy trial ground, asserting that the prosecution's motion was made under Ariz. R. Crim. P. 8.5(b), rather than 8.4, and that the requirement for presentation to the Chief Justice of the Supreme Court applied only to motions under Rule 8.4. (Exhibit J, Mem. Dec. at 7-9.) The court also rejected his "post-accusation delay" ground, finding that the stipulation to Petitioner's authorship of the incriminating letters obviated the need for handwriting exemplars and that the trial court found that the delay in obtaining the exemplars was not the fault of the prosecution but "was the direct result of Nino's actions and not the fault of the State." (*Id.* at 9.)

**Motion for Reconsideration** - Petitioner filed a Motion for Reconsideration (Exhibit K), arguing that the trial continuance had been granted under Rule 8.4(c), even though the motion was brought under Rule 8.5, and that the prosecution had falsely blamed Petitioner for the delays in obtaining the handwriting examples. The motion was denied. (Exhibit L, Order 4/19/05.)

**Petition for Review** - Petitioner then sought review by the Arizona Supreme Court (Exhibit M), which was summarily denied (Exhibit N, Order 10/4/5; Exhibit Q, M.E. 5/22/6).

**D. PROCEEDINGS ON FIRST POST-CONVICTION RELIEF**

**In PCR Court** - On December 29, 2005, Petitioner filed Notice of Post-Conviction Relief (Exhibit O). Counsel was appointed to represent Petitioner. (Exhibit P, M.E. 1/6/6.) Counsel filed a PCR Petition (Exhibit R) asserting: (1) newly discovered evidence that the juror pool system utilized had been determined constitutionally infirm (*id.* at 4-11); (2) ineffective assistance of counsel under state and federal constitutions, as a result of counsel's (a) stipulation to Petitioner's authorship of the incriminating jailhouse letters (*id.* at 11-13), (b) improperly objecting to instructions about the stipulation and failing to request

instructions on the absence of mailing of the letters (*id.* at 13), (c) failing to require a proper foundation for admission of the translation of the letter and opposing a limiting instruction (*id.* at 13-14), (d) improperly stipulating to the translation which was inaccurate (*id.* at 14-15).

Attached to the Petition as an exhibit was Petitioner's handwritten PCR Petition, asserting a denial of "due process of law and fair trial as a result of prosecutorial misconduct, judicial overreaching, and abuse of discretion, miscarriage of justice" (Exhibit O, PCR Pet. at Exhibit 1.) Petitioner's Certification and Affidavit (Exhibit TT) for the Petition included a statement that the petition "contains all the claims and ground for post-conviction relief that are known to me." However, Petitioner wrote on the document that he did not "wish to waive any claims raised in my own brief for post-conviction relief filed in pros se on December 29, 2005." Petitioner noted that counsel had simply appended that document as an exhibit to the PCR petition, and had not submitted it as a supplemental brief.

The PCR court ignored the Petitioner's handwritten petition, and addressed only the claims raised by counsel. The court rejected the juror pool claim. (Exhibit T, M.E. 1/9/7 at 1-2.) As to the ineffective assistance claim, the Court found that Petitioner failed to show both deficient performance and prejudice. As to the deficient performance, the court found that absent the stipulation the authorship of the letters could have been established by handwriting experts, or other means such as appearance, contents, substance, etc. The latter would have rendered evidence of Defendant's gang membership relevant, and thus the stipulation avoided this risk. Because the court found it likely the letters would have been admitted regardless, it found no prejudice from the stipulation. The court found that the instruction proposed by Petitioner would have been an improper comment on the evidence, and was not appropriate given that communication of the letter was not necessary to its relevance. (*Id.* at 2-3.) The court did not address Petitioner's translation issues.

**Arizona Court of Appeals** - Petitioner filed through counsel a Petition for Review (Exhibit U), asserting ineffective assistance of counsel under the Sixth Amendment and *Strickland v. Washington*, as a result of the stipulation to the authorship of the intercepted

jailhouse letters, stipulation to the translation despite purported errors in the translation, and failed to obtain a limiting instruction on the lack of mailing of the letters. The Arizona Court of Appeals summarily denied review on November 2, 2007 (Exhibit W).

**Arizona Supreme Court** - Petitioner subsequently presented a *pro se* Petition for Review by the Arizona Supreme Court, but the Arizona Court of Appeals issued an order denying filing of the Petition based on its untimeliness. (Exhibit X, Order 1/24/8.) Subsequently, however, the court reinstated the matter to permit a delayed petition for review. (Exhibit Y, Order 2/13/08.)

Petitioner then filed his *pro per* Petition for Review (Exhibit Z), again asserting his Sixth Amendment ineffective assistance claim based upon the stipulation to authorship. The Arizona Supreme Court summarily denied review. (Exhibit AA, Order 5/16/08.)

**E. PROCEEDINGS ON SECOND POST-CONVICTION RELIEF**

On July 20, 2007, Petitioner filed with the trial court a document entitled "PCR Counsel's Refusal to Raise All Claims" (Exhibit BB). The trial court construed this as a Notice of Post-Conviction Relief, and ordered the filing of a PCR petition. (Exhibit CC, M.E. 8/15/7.) On October 11, 2007, Petitioner filed his Potion for Post-Conviction Relief (Exhibit DD), asserting ineffective assistance of PCR counsel in failing to raise various claims, and ineffective assistance of trial counsel in failing to call witnesses.

The state then filed a Motion for Reconsideration and Motion to Dismiss (Exhibit EE), arguing that the court had improperly identified Petitioner's first PCR as an "of-right" petition, and thus had improperly permitted Petitioner to file a successive petition. In response, the court vacated it's minute entry treating the filing as a second PCR notice. (Exhibit FF, M.E. 12/20/7.)

On the same date, however, another judge was assigned the petition for a ruling. (Exhibit GG, M.E. 12/20/7.) The assigned judge then summarily dismissed the Petition. (Exhibit HH, M.E. 1/2/8.) The state sought reconsideration, again arguing that the petition was an improper second petition. (Exhibit II.) The motion was granted, and the summary

dismissal was vacated. (Exhibit KK, M.E. 3/4/8.)

Petitioner filed a Motion for Reconsideration (Exhibit LL), arguing that he had refused to waive the claims that counsel refused to raise in his first PCR. The state responded (Exhibit NN), arguing that Petitioner's purported reservation did not prevent preclusion of his un-presented claims. The motion was summarily denied. (Exhibit OO, M.E. 5/26/9.)

## F. ORIGINAL FEDERAL HABEAS

In CV-06-2081-PHX-JAT (JRI), *Nino v. Schriro, et al.*, Petitioner filed his original federal habeas petition. In light of the then still pending state proceedings, that petition was dismissed without prejudice as premature. (Pet. Exhibit 11, Order 9/28/06; Pet. Exhibit 12, Judgment 9/29/06.)

## G. PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on January 21, 2009 (#1). He also filed a Memorandum in Support (#3). Petitioner's Petition asserts the following three grounds for relief:

> (1) Petitioner's First, Fifth, Sixth, and Fourteenth Amendment due process and speedy trial rights were violated when the trial court granted a continuance in Petitioner's criminal trial;
> (2) Petitioner's First, Fifth, Sixth, and Fourteenth Amendment due process rights were violated when Petitioner was denied a fair and impartial trial because the state intentionally caused a delay in Petitioner's trial by using an avoidable scheduling conflict to gain a tactical advantage; and
> (3) Petitioner's First, Fifth, Sixth, and Fourteenth Amendment rights were violated by the ineffective assistance of his trial counsel.

(Service Order 2/24/09, #4.)

**Response** - On June 17, 2009, Respondents filed their Response ("Answer") (#12). Respondents argue:

(1)     With regard to Ground 1 (speedy trial), the claim: (a) is an incognizable state

law claim; (b) was not properly exhausted by presentation to the state courts as a federal claim, is procedurally defaulted, and Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice to excuse his default; and (c) is without merit due to the absence of any prejudice under *Barker v. Wingo*, 407 U.S. 514, 522 (1972). (#12 at 21-28.)

(2)    With regard to Ground 2 (intentional delay), the claim: (a) was not properly exhausted by presentation to the state courts as a federal claim, is procedurally defaulted, and Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice to excuse his default; and (b) is without merit. (*Id.* at 28-33.)

(3)    With regard to Ground 3 (ineffective assistance), the claim is without merit.

**Reply** - On July 14, 2009, Petitioner filed a Reply (#13), arguing the merits of his claims.

## III. APPLICATION OF LAW TO FACTS

### A. EXHAUSTION & PROCEDURAL DEFAULT

Respondents assert that Grounds 1 (speedy trial) and 2 (intentional delay) were not properly presented to the statue courts as federal law claims, are unexhausted, and procedurally defaulted.

### 1. Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c). When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp,* 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

//

### a. Proper Forum/Proceeding

Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court. This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989). "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999)).

Effect of Life Sentence - In this case, Petitioner received a life sentence. (Exhibit D, Sentence.) It is true that the *Swoopes* decision refers to there being no right of appeal to the Arizona Supreme Court "except in capital cases or when a life sentence is imposed." *Swoopes*, 196 F.3d at 1009. The decision concludes that "except in habeas petitions in life-sentence or capital cases, claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them. *Id.* at 1010. Under that express holding, Petitioner would be obligated to present his claims to the Arizona Supreme Court in order to fully exhaust.

However, In reaching its decision in *Swoopes,* the Ninth Circuit was faced with a habeas petitioner whose appeal to the Arizona Court of Appeals was denied in 1988, prior to the 1989 amendments eliminating life-sentences from the exceptions to Arizona Court of Appeals jurisdiction. *See State v. Swoopes*, 155 Ariz. 432, 747 P.2d 593 (App. 1988). Similarly, the Ninth Circuit was required to draw on Arizona decisions applying the pre-1989 amendments law. In *State v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (1989), the Arizona Supreme Court considered the review rights of a defendant whose appeal was denied in 1986. *Sandon*, 161 Ariz. at 157, 777 P.2d at 220. Although the *Sandon* court noted the adoption

of the 1989 amendments in a footnote, they were not applying that law. *Id.* at 158 n. 1, 777 P.2d at 221 n.1.

Similarly, the decision in *State v. Shattuck*, 140 Ariz. 582, 684 P.2d 154 (1984), also relied on in Swoopes, predated the 1989 amendments. Indeed, the only Arizona decision relied upon in *Swoopes* and made after the 1989 amendments was *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998). *Moreno* did not, however rely upon Ariz.Rev.Stat. §§ 12-120.21 or 13-4031, or specifically discuss the death/life sentence limitation. Rather, *Moreno* focused on the "nature and scope of discretionary review by petition for review," *Moreno*, 192 Ariz. at 134, 962 P.2d at 133, and was concerned with whether such discretionary review was an "appeal" within the meaning of the exceptions to Arizona's timeliness bar for claims not presented on "appeal" for good cause.

Moreover, the import of *Sandon* was the Arizona Supreme Court's apparent desire to stop the flood of "large numbers of prisoner petitions seeking to exhaust state remedies." *Sandon*, 161 Ariz. at 157, 777 P.2d at 220. The *Sandon* court concluded that "'[o]nce the defendant has been given the appeal to which he has a right, state remedies have been exhausted." *Id.* at 158, 777 P.2d at 221, quoting *Shattuck*, 140 Ariz. at 585, 684 P.2d at 157. Thus, their recitation of the death/life sentence limitation is not properly read as the limit of their holding, but as a reiteration of the pre-1989 holding of *Shattuck*. Thus *Sandon* may only be reasonably read as an attempt by the Arizona Supreme Court to remove their discretionary review from the cycle of review required for exhaustion of state remedies. While a given respondent may desire to require its Arizona prisoner to file a petition for review with the Arizona Supreme Court, it is not the respondents' desire, however, but that of the Arizona Supreme Court that is controlling.

Finally, *Swoopes* itself did not hinge on any reading of Ariz.Rev.Stat. §§ 12-120.21 or 13-4031 themselves, but upon the question "whether Arizona has identified discretionary Supreme Court review 'as outside the standard review process and has plainly said that it need not be sought for the purpose of exhaustion.' " *Swoopes*, 196 F.3d at 1010, quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 1735 (1999). The only basis for

identifying that discretionary review as being tied to death/life sentences was the language of *Shattuck* and *Sandon*, and their reliance upon the then applicable pre-1989 versions of Ariz.Rev.Stat. §§ 12-120.21 and 13-4031. *See also Crowell v. Knowles*, 483 F.Supp2d 925, 931-932 (D.Ariz. 2007) (extending *Swoopes* to life sentences after 1989 amendments).

Thus, until this issue is resolved by the Ninth Circuit, the Arizona District Courts are faced with either applying the exact language of *Swoopes*, or applying the principle of *Swoopes* to the facts as they exist in this case. The latter holds truer to the function of a trial court in attempting to apply appellate court precedent.

> Using the techniques developed at common law, a court confronted with apparently controlling authority must parse the precedent in light of the facts presented and the rule announced. Insofar as there may be factual differences between the current case and the earlier one, the court must determine whether those differences are material to the application of the rule or allow the precedent to be distinguished on a principled basis.

*Hart v. Massanari*, 266 F.3d 1155, 1172 (9th Cir. 2001).

In *O'Sullivan*, the Supreme Court held that " 'the creation of a discretionary review system does not, without more, make review' in a state supreme court 'unavailable.'" *Swoopes*, 196 F.3d at 1009 (quoting *O'Sullivan*, 119 S.Ct. at 1734). The reasoning of *Swoopes* is based upon the determination that the Arizona Supreme Court has instructed that discretionary review by that court is not part of the standard review process in Arizona and that it need not be sought for the purposes of exhaustion, and the Ninth Circuit's conclusion that this instruction is the something "more" referred to in *O'Sullivan*. *Swoopes*, 196 F.3d at 1010.

Under the version of Ariz.Rev.Stat. § 12-120.21 applicable to Petitioner, review by the Arizona Supreme Court is now discretionary, and within the scope of the instruction in *Sandon* that it is thus unnecessary to exhaustion. Thus, that review is "unavailable" within the meaning of *Swoopes* and *O'Sullivan*, and utilization of that review is not necessary for a petitioner to exhaust his state remedies.

Effect of *Baldwin v. Reese* - Respondents argue (Answer, #12 at 12 n. 6) that presentation to the Arizona Supreme Court (not just the Arizona Court of Appeals) is now

required for exhaustion based upon the decision in *Baldwin v. v. Reese,* 541 U.S. 27, 30–33 (1999). The Ninth Circuit's subsequent reliance on *Swoopes* in *Castillo*, notwithstanding *Baldwin*, dispels this argument. Moreover, nothing in *Baldwin* precludes the reasoning in *Swoopes*. Nor does the language cited by Respondents from *State v. Ikirt*, 160 Ariz. 113, 117, 770 P.2d 1159, 1163 (1989), which predated the Arizona Supreme Court's decision in *State v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (Ariz.1989), on which *Swoopes* is based.

<u>Skipping Intermediate Courts</u> - Regardless whether presentation to the Arizona Supreme Court is necessary for exhaustion, presentation of a federal claim for the first time in that court is not sufficient to exhaust an Arizona state prisoner's remedies. "Submitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). In *Casey v. Moore*, 386 F.3d 896 (9th Cir. 2004), the court reiterated that to properly exhaust a claim, "a petitioner must properly raise it on every level of direct review."

> Academic treatment accords: The leading treatise on federal habeas corpus states, "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state."

*Casey*, 386 F.3d at 916 (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (4th ed. 1998)). The Arizona Supreme Court does not grant review of claims not raised below, absent special considerations. *See State v. Logan*, 200 Ariz. 564, 565, 20 P.3d 631, 632, n.2 (2001).

**b. Fair Presentment**

To result in exhaustion, claims must not only be presented in the proper forum, but must be "fairly presented." That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim. 28 U.S.C. § 2254; *Picard v. Connor,* 404 U.S. 270, 276-277 (1971). A claim has been fairly presented to the state's highest court if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. *Kelly v. Small*, 315

- 13 -

F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, *Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007)).

Failure to so alert the state court to the constitutional nature of the claim will amount to failure to exhaust state remedies. *Duncan v. Henry*, 513 U.S.364, 366 (1995). While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor,* 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(per curiam). "In order to alert the state court, a petitioner must make reference to provisions of the federal Constitution or must cite either federal or state case law that engages in a federal constitutional analysis." *Fields v. Waddington,* 401 F.3d 1018, 1021 (9th Cir. 2005).

**2.  Application to Petitioner's Claims**

**Ground 1** - Petitioner argues in his Ground 1 that he was denied his federal speedy trial rights. (Petition, #1 at 6.)   He asserted a speedy trial claim on direct appeal.  (Exhibit F, *Pro Se* Supp. Brief at 3-4; Exhibit H, Supp. Brief at 5-9.)  However, in doing so, Petitioner made no reference to any federal constitutional provision, law, or case.  Instead, his entire argument was based solely on Rule 8, Arizona Rules of Criminal Procedure.  The only case he cited, *State v. Vasko*, 193 Ariz. 142, 971 P.2d 189 (Ariz. App. 1998), was based solely on the application of Arizona's speedy trial rule.  Indeed, the court noted that "We address a rule violation, not a constitutional violation in this case."  *Id.* at 147, 917 P.2d at 194. Consequently, the Arizona Court of Appeals addressed this claim only under Arizona's Rule 8, and not under federal law.  (*See* Exhibit J, Mem. Dec. at 7-8.)

It is true that in his Petition for Review to the Arizona Supreme Court that Petitioner expanded this claim to assert that "his constitutional right to a speedy trial was violated." However, Petitioner does not differentiate between the federal constitution's speedy trial right, and that provided under the Arizona Constitution. Ariz. Rev. Stat. Const. Art. 2 § 24

("right...to have a speedy public trial"). The only additional citation provided by Petitioner, to *State v. Heise,* 117 Ariz. 524, 526, 573 P.2d 924, 926 (Ariz.App. 1977), did not address a constitutional violation, but simply "a violation of Rule 8."

Moreover, even if Petitioner had properly presented a federal speedy trial claim to the Arizona Supreme Court, his failure to have previously presented it to the Arizona Court of Appeals precludes a finding that it was fairly presented. *Casey*, 386 F.3d at 916.

Therefore, the undersigned concludes that Petitioner did not fairly present a federal speedy trial claim to the Arizona courts, and thus did not properly exhaust his state remedies on that claim.

**Ground 2** - For his Ground 2, Petitioner asserts a denial of due process as a result of the prosecution delaying trial to obtain a tactical advantage. Respondents argue that this claim was never raised as a federal claim.

The facts of the claim were clearly raised in his *pro per* Supplemental Brief to the Arizona Court of Appeals. It is true that Petitioner referenced no federal constitutional provisions in support of this claim, but he did reference (albeit without reporter citation) the case *Barker v. Wingo*, 407 U.S. 514, 522 (1972) (factors to find constitutional speedy trial violation). (Exhibit F, *Pro Per* Supp. Brief at 5.)

*Barker* dealt with the Sixth Amendment speedy trial right as applied to the states by the Due Process Clause of the Fourteenth Amendment. 407 U.S. at 515. In addition to addressing waiver issues, the *Barker* court laid out an *ad hoc* means for determining whether a violation has occurred, based upon consideration of four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530.

Petitioner not only cited *Barker*, but argued that the court should "examine the cause of the delay, focusing on the state's motive." (Exhibit F, *Pro Per* Supplemental Brief at 5.)

Respondents do not acknowledge Petitioner's reference to *Barker*, nor explain why it was insufficient to exhaust this claim. While inclusion of a reporter citation to *Barker* would have eliminated any question, the undersigned does not find the absence of such a

- 15 -

citation controlling. *Barker* is not some obscure federal case, but is the seminal case on federal speedy trial law. At the time of its decision in this case in March 2005, *Barker* had been cited by Division 1 of the Arizona Court of Appeals on a number of occasions. *See e.g. State v. Lee*, 25 Ariz. App. 220, 224, 542 P.2d 413, 417 (Ariz. App. 1975); *State v. Kangas*, 146 Ariz. 155, 158, 704 P.2d 285, 288 (Ariz.App.1985); *State v. Estrada*, 187 Ariz. 490, 491, 930 P.2d 1004, 1005 (Ariz.App. 1996). Indeed, Westlaw's citing references service reports some 66 citations to *Barker* by the Arizona Courts as of this writing.

The import of the reference to *Barker* was not lost on the Arizona Court of Appeals which classified this claim as alleging a violation of "his constitutional rights" (Exhibit J, Mem. Dec. at 9). A state court's actual consideration of a claim satisfies exhaustion. *See Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of exhaustion than a state court's actual consideration of the relevant constitutional issue"); *see also Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir.1990) (state court's *sua sponte* consideration of an issue satisfies exhaustion).

Moreover, to the extent that presentation to the Arizona Supreme Court might be required Petitioner expanded his references to federal law in his Petition for Review to that court, citing a variety of federal cases, including *Barker* and *Wells v. Petcock*, 941 F.2d 253 (3rd Cir. 1991) (applying *Barker* to analyze a federal constitutional speedy trial claim), and specifically referencing his "right to due process of law as secured by state and federal constitution". (Exhibit K, Pet. Rev. At 5-5.)

Based upon the foregoing, the undersigned concludes that Petitioner's Ground 2 was fairly presented as a federal claim under *Barker* and the claim was properly exhausted.

**Summary re Exhaustion** - Respondents concede the exhaustion of Ground 3 (ineffective assistance), fail to controvert the exhaustion of Ground 2 (post-accusation delay), but have shown that Petitioner failed to properly exhaust Ground 1 (speedy trial).

/ /

/ /

/ /

**3.  Procedural Default**

Ordinarily, unexhausted claims are dismissed *without prejudice*.  *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal *with prejudice* of a procedurally barred or procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would  excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a), and its timeliness bar in Ariz. R. Crim. P.  32.4.  (Answer, #12 at 23.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence.  Moreover, Arizona law makes no provision for successive direct appeals.  Accordingly, direct appeal is no longer available for review of  Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** - Petitioner can also  no longer seek review by a subsequent PCR Petition.  Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).   That time has long since passed.

Exceptions - Rules 32.2 and  32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).  *See* Ariz. R. Crim. P.  32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P.  32.4(a) (exceptions to timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable to his claims.  Nor, with one exception, does it appears that such exceptions would apply.  The rule defines

the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

None of these exceptions would apply to Petitioner's speedy trial claim in Ground 1. Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence. Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Paragraph (f) has no application where the petitioner filed a timely notice of appeal. Paragraph (g) has no application because Petitioner has not asserted a change in the law. Finally, paragraph (h), concerning claims of actual innocence, has no application to Petitioner's procedural claims. *See State v. Swoopes*, 216 Ariz. 390, 404, 166 P.3d 945, 959 (App. 2007) (32.1(h) did not apply where petitioner had " not established that trial error ...amounts to a claim of actual innocence").

Accordingly, the undersigned must conclude that review through Arizona's direct appeal and post-conviction relief process is no longer possible for Petitioner's unexhausted

claim in Ground 1.   Accordingly, that unexhausted claim is procedurally defaulted, and absent a showing of cause and prejudice or actual innocence, must be dismissed with prejudice.

If the habeas petitioner has procedurally defaulted on a claim, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).  Failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986)  Here, Petitioner has offered no explanation to excuse his failure to exhaust.  The undersigned finds none. Nor has Petitioner made any assertion that he is actually innocent.

Accordingly, Petitioner's unexhausted claim in Ground 1 must be dismissed with prejudice.


**B.  PRESUMPTIONS AND STANDARDS FOR RELIEF**

**Applicable Decision** - In addressing a habeas petition by a state prisoner, a federal habeas court reviews the "last reasoned decision" by a state court. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

**Legal Error** - While the purpose of a federal habeas proceeding is to search for violations of federal law, not every error justifies relief.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24-25 (2002) (*per curiam*).  To justify habeas relief, a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted.  28 U.S.C. §2254(d)(1).

**Factual Error** - However, Federal courts are also authorized to grant habeas relief in cases where the state-court decision  "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Nonetheless, "a federal court may not second-guess a state court's fact-finding

process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."  *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

Moreover, a state prisoner is not free to attempt to retry the facts of his case in the federal courts.  There is a well established presumption of correctness of state court findings of fact.  This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."  Further, a state petitioner may not seek an evidentiary hearing nor supplement the record with extrinsic evidence unless he first shows that he has not failed to develop the factual basis of the claim in the state courts.  *See* 28 U.S.C. § 2254(e)(2).

## C.  GROUND 2 - POST-ACCUSATION DELAY

For his Ground 2, Petitioner asserts a denial of due process as a result of the prosecution delaying trial to obtain a tactical advantage.  Respondents argue that this claim is without merit because: (1) the delay was of Petitioner's own making; and  (2) Petitioner has not shown prejudice.  (Answer, #12 at 31-33.)  Petitioner disputes his responsibility for the delay, and asserts that but for the delay, trial would have proceeded without the letters, which was the only difference between the first and second trials.  (Reply, #13 at 2-4.)

In *Barker*, the Court noted: "We have indicated on previous occasions that it is improper for the prosecution intentionally to delay 'to gain some tactical advantage over (defendants) or to harass them.'" *Barker*, 407 U.S. at 531, n. 32 (quoting *United States v. Marion,* 404 U.S. 307, 325 (1971)).  The Court noted this in the context of discussing the "reason for the delay" factor to be considered in evaluating speedy trial claims.  The Court commented that a "deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government . . . a valid reason, such as a missing witness, should serve to justify appropriate delay." 407 U.S. at 531.

That factor, the reason for the delay, was but one of the four factors that must be

considered: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. The Court regarded "none of the four factors identified as either a necessary or sufficient condition to the finding of a deprivation of the right of a speedy trial." *Id.* at 533.

Regardless of the effect, "delay attributable to the defendant's own acts or to tactical decisions by defense counsel will not bolster defendant's speedy trial argument." *McNeely v. Blanas,* 336 F.3d 822, 827 (9th Cir. 2003). Rather, delay caused by the defense weighs against the defendant: '[I]f delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine.' " *Vermont v. Brillon,* ___ U.S. ___, 129 S.Ct. 1283, 1290 (2009) (quoting *Barker,* 407 U.S. at 529) (but recognizing exception for a "systematic breakdown in the public defender system").

**<u>Source of the Delay</u>** - Here, the last reasoned decision on this claim was that of the Arizona Court of Appeals on direct appeal. That court rejected the claim because the purported prejudice, *e.g.* the ability to obtain admission of the letters, was obviated by the stipulation to admit them. Moreover, the court rejected Petitioner's contention that the delay prior to the January 29, 2003 continuance in obtaining the handwriting exemplars was the fault of the state, not Petitioner. The court noted, "the trial court ruled that the State was unable to timely obtain those handwriting samples because Nino successfully thwarted the State's timely and diligent, efforts by failing to provide the exemplars . . . [and] that any undue delay caused by the process of obtaining handwriting exemplars was the direct result of Nino's actions and not the fault of the State." (Exhibit J, Mem. Dec. at 9-10.)

Petitioner argues that the Arizona courts got it wrong because the delay was not his fault but the prosecution's. The court's findings about the cause for the delay are factual findings entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). Petitioner attempts to provide the "clear and convincing evidence" required to overcome that presumption by pointing to the state's acceptance of responsibility at the time of the grant of the continuance. However, the prosecutor did not assume responsibility for all delay related to the exemplars, but simply volunteered that the state's detective who was to obtain

the exemplars hadn't "carried through on it." (Reply Exhibit D, R.T. 1/29/03 at 12. *See also* Exhibit H, Supp. Brief at 3.)) There was no indication by the prosecution whether that failure had been for a day, a week, a month, or since the very first order that the exemplars be given.

Petitioner offers nothing else to show that the state court's depiction of the entire situation as being Petitioner's responsibility was wrong. Indeed, the Court's instructions at the close of the first trial were that "Defense counsel will arrange for Defendant to provide a sample to Detective Calderon next week." (Exhibit B, M.E. 12/20/2 at 3.) Petitioner does not explain why any failure by the state's detective overcame the responsibility given to defense counsel to have the exemplars provided.

Petitioner has failed to provide clear and convincing evidence that the state courts' attribution of the delay to Petitioner was incorrect.

Even if Petitioner could show that the delay was attributable to the prosecution's desire to obtain admission of the jailhouse letters, that would not establish a speedy trial violation. Rather, the Court would still have to consider the *Barker* factors.

**Length of the Delay** - The *Barker* Court noted the imprecision applied to the lenght of delay factor.

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.

407 U.S. at 530-531. Here, the delay which Petitioner asserts was occasioned by the prosecution was from the February 3, 2003 trial date (Exhibit BB, M.E. 12/13/2), until the March 13, 2003 trial date set upon the prosecution's motion. (Exhibit QQ, M.E. 1/29/03.) (The delay from then until the actual trial on March 24, 2003 was the result of Petitioner's motion. (Exhibit C, M.E. 3/7/03.) Thus, the disputed delay was for a mere 38 days.

In *U.S. v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 565 (1983), the court observed that "short delays--of perhaps a month or so--need less justification than longer delays." Given the shortness of the delay

between Petitioner's first and second trials, a little over three months, and the ten months between being charged and inception of the second trial, the length of the delay would not weigh heavily in Petitioner's favor. Moreover, given the gravity of the crime, these times are not excessive.

**Reason for the Delay** - Further, Petitioner fails to show that the delay in obtaining the exemplars was to gain an improper tactical advantage. Petitioner appears to presume that a delay by the prosecution to gather evidence is improper. However, the "tactical advantage" decried in *Barker* did not extend to such reasons. Indeed, the *Barker* court noted that some needs to secure evidence, such as a "missing witness," would be a "valid reason" for delay. 407 U.S. at 531. Instead, the type of unfair tactical advantage that results in a speedy trial violation is the denial of evidence to the defense. In the context of applying due process limits to the pre-indictment delay, the Court has observed that "investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused." *U. S. v. Lovasco,* 431 U.S. 783, 795 (1977) (quoting *U.S. v. Marion*, 404 U.S. 307, 324 (1971)).

That is not to say that any delay founded upon efforts by the prosecution to shore up its case is excusable. *See e.g. Strunk v. U.S.*, 412 U.S. 434, 436 (1973) (considering but weighing "less heavily" "[u]nintentional delays caused by overcrowded court dockets or understaffed prosecutors"). "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker,* 407 U.S. at 531. Here, the purported negligence of the prosecution in pursing the handwriting evidence must be weighed "less heavily."

**Defendant's Assertion of His Right** - Defendant opposed the motion to continue. (Exhibit QQ, M.E. 1/29/03.) That opposition has not been provided, but the prosecution described it as "arguing that his case should take precedence...because he was in custody." Because it does not affect the outcome, the undersigned presumes for purposes of this Report & Recommendation that this opposition was on speedy trial grounds, and not solely on some

other basis.  With that assumption, this factor would weigh in favor of finding a speedy trial violation.

**Prejudice** - The state courts found a lack of prejudice from the delay because Petitioner eventually stipulated to admission of the letters and their attribution to Petitioner. Petitioner argues that this should be irrelevant because those stipulations were given only after the improper advantage from the delay had already occurred.  However, as recognized by the PCR court, the stipulation to admission and attribution of the letters would have left issues of Petitioner's gang membership "relevant for the foundation for the admissibility of the letter."  (Exhibit T, M.E. 1/9/7 at 3.)  Thus, the stipulation was not merely an acceptance of an improperly gained admissibility, but a tactically sound alternative to a full blown fight over the attribution of the letters by other means which may have highlighted Petitioner's gang connections.

Moreover, even if the stipulations were ignored, this Court could not find prejudice. The speedy trial guarantee does not seek to prevent the defense's fortuitous loss of the ability to win by ambush  "[I[nability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past." *Barker*, 407 U.S. at 532.  Petitioner has never asserted that type of prejudice.

Thus, even if the prosecution were found responsible for delaying trial in order to obtain evidence to attribute the jailhouse letters to Petitioner, the fact that they succeeded in doing so would not constitute the kind of prejudice that must be shown.

Petitioner makes no attempt to show any peculiar impact on the other types of prejudice, i.e. "oppressive pretrial incarceration" or " anxiety and concern of the accused". *See Barker*, 407 U.S. at 532.  Given the short 38 day delay occasioned by the prosecution, and the

**Weighing** - At best, Petitioner has shown a 38 day delay, granted over his objection, caused by the prosecution's negligent delays in obtaining additional evidence, which resulted

in no cognizable prejudice to Petitioner's defense. Under those circumstances, the undersigned could not find that Petitioner's speedy trial rights were violated.

**Summary** - Petitioner has failed to overcome the presumption of correctness applicable to the state court's attribution of the disputed delay to Petitioner. Moreover, even if that delay were attributable to the prosecution, Petitioner has failed to show that the delay in commencing his second trial was a violation of his federal speedy trial rights under the *Barker* factors. Accordingly, the undersigned finds that Petitioner has failed to establish a speedy trial violation under *Barker*, and this Ground 2 is without merit, and must be denied.

## D. GROUND 3 - INEFFECTIVE ASSISTANCE

For his Ground 3, Petitioner argues that he was denied effective assistance of counsel "when the trial counsel stipulated to Petitioner's handwriting instead of providing the state with handwriting samples and did not challenge the evidence properly throughout trial." (Petition, #1 at 8.) Petitioner argues that counsel incorrectly assumed (despite the stipulation that the letters were Petitioner's) that the defense would be successful in having the letters excluded based upon the gang references. (*Id.*) Petitioner also complains that trial counsel improperly stipulated to the translations and failed to pursue an instruction "to advice jurors that the letter was never mailed out and the witnesses were unaware of the indirect threats contained in the letter." (*Id.*)

Respondents argue that Petitioner cannot show deficient performance or prejudice. (Answer, #12 at 36-38.)

## 1. Applicable Standard

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on such a claim, petitioner must show: (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different. *Id.* at 687-88, 694. Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id.* at 697.

**2. State Court's Ruling**

The last reasoned decision on Petitioner's claim was that by the PCR court. (*See* Exhibit T, M.E. 1/9/7; Exhibit W, Order 11/2/7 (review summarily denied); and Exhibit AA, Order 5/16/08 (review summarily denied).)

**Stipulation to Attribution** - The PCR court rejected Petitioner's claim on the attribution stipulation, finding that the letters would ultimately have been admissible even without the stipulation, either by admission of a handwriting analysis (for which the trial court would have permitted further trial delay) or through other means such as the writing's "appearance, contents, substance, internal patterns or other distinctive characteristics." (Exhibit T, M.E. 1/9/7 at 3.) Moreover, the court found that such means of introduction was "likely to have been more prejudicial to the Defendant than the stipulation" because it would have rendered "evidence of Defendant's gang membership" relevant. (*Id.*)

**Jury Instruction** - The PCR court found that failure to proffer the instruction on mailing was not deficient performance because the instruction would have been rejected because it would have been an improper comment on the evidence, and the fact of mailing or communication was not necessary to the letters' relevance. (*Id.*)

**Stipulation to Translation** - The PCR court did not address Petitioner's claim that "Defense counsel was remiss in stipulating to the court interpreter's translation and should have insisted on cross-examining her." (Exhibit R, PCR Pet. at 14.)

**3. Stipulation to Attribution**

Petitioner does not counter the PCR court's basis for rejecting his claim on the attribution stipulation. Instead, he simply argues that the prosecution could not admit the letters without attributing them to Petitioner, which was why they had not been admitted in

the first trial.  (Reply, #13 at 5.)  Petitioner's argument is true, but irrelevant.

The undersigned finds that counsel's advice/choice to stipulate to attribution was reasonable given the alternatives of either further delay from a handwriting analysis, or worse yet, a fight at trial over attribution.  Petitioner does not contend that the writings were not his, or that exemplars would not have eventually been obtained, and his authorship established.  Thus, nothing would have been gained from the delay of forcing the prosecution through that process.

There is also no merit in Petitioner's argument that such delay would have been improper, both for the reasons discussed above in connection with Ground 2, and because the argument is circular.  As noted by the PCR court, which was the same judge as the trial judge, "the Court would have continued the trial if necessary to allow the handwriting experts to examine exemplars of the Defendant's handwriting." (Exhibit T, M.E. 1/9/7 at 3.)

Further, there was much to be lost from forcing the prosecution to prove attribution.  As argued by Petitioner, the defense sought to remove from trial any references to his gang involvement.  Forcing the state to prove attribution would have opened the doors to such evidence given the use of gang slang, etc.

Given the limited gain and potentially high cost to refusing the stipulation, counsel could have made a reasonable tactical judgment to stipulate to attribution.  And it is inconsequential that Petitioner now wants to second guess the decision.  Tactical decisions with which a defendant disagrees cannot form the basis for a claim of ineffective assistance of counsel. *Morris v. California*, 966 F.2d 448, 456 (9th Cir. 1991), cert. denied, 113 S. Ct. 96 (1992).  "Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation." *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980).

Similarly, it is inconsequential that counsel's decision may have actually been founded upon a mistaken belief that he could avoid admission of the letters even after the stipulation to attribution, based upon the gang references in the letters.  The court need not determine the actual reason for an attorney's actions, as long as the act falls within the range of reasonable representation.  *Morris*, 966 F.2d at 456-457.  Even had counsel known that

the stipulation of attribution would have resulted in admission of the letters, the stipulation would have remained a reasonable tactical decision.

Accordingly, the undersigned cannot find that the PCR court's rejection of this claim was an unreasonable application of federal law.

**4. Stipulation to Translations**

The state courts did not address the stipulation to the translations. Where there is no reasoned rejection of the claim, it is impossible to ascertain whether the state court identified the correct law, or whether they applied it reasonably. This Court is left to applying its own evaluation, comparing the outcome to that of the state court, and only then if there is a discrepancy can this court begin to evaluate whether the state court outcome was "contrary to or an unreasonable application of" Supreme Court law. *See Himes v. Thompson*, 336 F.3d 848, 853 and n.3 (9th Cir. 2003) ("Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable")

Beyond asserting a general lack of prejudice from the letters due to the other incriminating evidence, Respondents do not address this claim in their Answer (#12), and did not address it before the PCR court (Exhibit S, PCR Resp.) or the Arizona Court of Appeals (Exhibit V, PFR Resp.).[1]

However, Petitioner fails to establish that any interpreting errors were so significant that counsel was deficient in failing to oppose the translation. Petitioner complained to the PCR court that the translation interpreted the opening of the letter as "Dear Bro, I waited for you on Thursday caus I finally secured the police report." (Exhibit R, PCR Pet. at Exh. A,

---

[1] The prejudice issue is not reached herein because the undersigned concludes that Petitioner has failed to show deficient performance. Moreover, without evidence of the additional errors claimed by Petitioner in his counsel's PCR Petition, this Court cannot determine the impact of any such errors. Addressing those matters would likely require an evidentiary hearing (assuming one would be permissible under the limitations in 28 U.S.C. § 2254(e)).

Supplement at 17 (emphasis in original.)  Petitioner argued that the translation should have been "Dear <u>Carnal</u>, I waited for you on Thursday cause I finally <u>received</u> the police report." (*Id.* (emphasis in original).)   No other specifics were given to support PCR counsel's assertion that "Petitioner alleges that he court interpreter misinterpreted some of the words to connote a different, and harsher meaning."  (Exhibit R, PCR Pet. at 14.)

The errors shown by Petitioner to the state court were too insignificant to show that reasonable counsel would have had cause to challenge the translation.   Moreover, challenging the translation, which was purportedly in gang slang,  would have opened the door to evidence about Petitioner's gang connections.  Thus, there was a tactical advantage to stipulating to the translation.

Under these circumstances, the undersigned finds no basis for a determination that counsel performed deficiently in stipulating to the translation.  Thus, a rejection of this claim would not be an unreasonable application of federal law.

**5.  Jury Instruction on Mailing**

Finally, Petitioner does not counter the PCR court's determination that his proposed jury instruction on the communication of the jailhouse letters would have been improper. Thus, this Court must conclude that further efforts by counsel to obtain such an instruction would have been futile.  The failure to take futile action can never be deficient performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996).   "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel."  *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

Even if further efforts by counsel might have somehow been successful in obtaining the improper instruction, such a potential outcome would not establish they type of prejudice required under *Strickland*.  When assessing prejudice, the court does not focus solely upon the outcome.  Rather, the governing legal standard in determining prejudice is "whether counsel's deficient performance renders the result of the trial unreliable or fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Accordingly, a different outcome

that would have resulted from acceptance of an incorrect legal analysis cannot be said to have resulted in fundamental unfairness and cannot constitute "prejudice". *Williams v. Taylor*, 529 U.S. 362, 391-392 (2000).

Accordingly, the undersigned finds no basis for determining that the PCR court's rejection of this claim was an unreasonable application of federal law.

**6. Summary re Ineffective Assistance**

Petitioner has failed to show any ineffective assistance of counsel. Thus, he has failed to show that the rejection of his ineffectiveness claims by the state courts were an unreasonable application of federal law. Consequently, his Ground 3 is without merit, and must be denied.

**E. SUMMARY**

Based on the foregoing, the undersigned concludes that Ground 1 (Speedy Trial) is procedurally defaulted and must be dismissed, and that Grounds 2 (Delay) and 3 (Ineffective Assistance) are without merit and must be denied.

## IV. CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability

("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits.

To the extent that Petitioner's claims are rejected on procedural grounds, under the reasoning set forth herein (and without the benefit of argument from the parties on the issue), the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling."

To the extent that Petitioner's claims are rejected on the merits, under the reasoning set forth herein (and without the benefit of argument from the parties on the issue), the undersigned finds that Petitioner's constitutional claims are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation, a certificate of appealability should be denied.


## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Ground 1 (speedy trial) of the Petitioner's Petition for Writ of Habeas Corpus, filed January 21, 2009 (#1) be **DISMISSED WITH PREJUDICE**.

1      **IT IS FURTHER RECOMMENDED** that the remainder of Petitioner's Petition for

2 Writ of Habeas Corpus, filed January 21, 2009 (#1) be **DENIED**.

3      **IT IS FURTHER RECOMMENDED** that to the extent the District Court's

4 judgment is based upon the reasoning in this Report & Recommendation, a Certificate of

5 Appealability be **DENIED**.

6

7                    **VI. EFFECT OF RECOMMENDATION**

8      This recommendation is not an order that is immediately appealable to the Ninth

9 Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of*

10 *Appellate Procedure*, should not be filed until entry of the district court's judgment.

11      However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall

12 have fourteen (14) days from the date of service of a copy of this recommendation within

13 which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing

14 Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to

15 file a response to the objections. Failure to timely file objections to any findings or

16 recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de*

17 *novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th

18 Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the

19 findings of fact in an order or judgment entered pursuant to the recommendation of the

20 Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

21

22 DATED: April 30, 2010                           _____

23                                       JAY R. IRWIN
                                  United States Magistrate Judge

24

25

26

27

28