**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ray Nino,<br><br>    Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>    Respondents. | No. CV-09-0133-PHX-JAT<br><br>**ORDER** |

    Ray Nino's ("Petitioner") Petition for Writ of Habeas Corpus is pending before the Court. Petitioner, incarcerated at the Arizona State Prison Complex at Florence, filed his Petition pursuant to 28 U.S.C. § 2254 on January 21, 2009 (Doc. #1). Petitioner asserts three claims for relief: 1) a speedy trial violation; 2) prosecutorial misconduct through a delay for tactical advantage; and 3) ineffective assistance of counsel pertaining to evidentiary matters during trial. United States Magistrate Judge Jay R. Irwin issued a Report and Recommendation ("R&R") recommending that this Court deny the Petition and the issuance of a certificate of appealability. After considering Petitioner's objections to the R&R (Doc. #16), the Court agrees with the R&R's conclusion because Petitioner has not made a substantial showing that any of his federal constitutional rights have been violated. Therefore, the Court denies both the Petition and issuance of a certificate of appealability.

**I.     Factual and Procedural Background**

The Arizona Court of Appeals summarized Petitioner's case as follows:

> According to the testimony at trial, Nino was socializing in the back of an automobile repair show with five or six other shop employees. The men had consumed six or seven thirty-packs of beer beginning at approximately nine o'clock in the morning and continuing throughout the day into the afternoon. Nino got in his vehicle and drove away.
>
> Nino returned to the shop about two hours later. He went to the back of the shop where several of the other men were still gathered, walked up to Cano and shot him in the left side of the head. Nino then walked away, telling the remaining men not to say anything about what had happened. After one of the men moved the victim's body and left, the other men called 9-1-1, eventually identifying Nino as the shooter.

R&R at 1-2. In December 2002, Petitioner's first trial ended in a mistrial. (Doc. #12, Exhibit J, Mem. Dec. at 3.). Shortly thereafter, both parties agreed to a retrial date of February 3, 2003, with proceedings running until February 13, 2003 at the latest. (*Id.*). On January 21, 2003, however, the State moved for a continuance because the prosecutor was also scheduled for another trial, *State v. Bonnie*, CR01-015147, on the retrial's starting date. (*Id.*). Although the prosecutor had originally attempted to continue *Bonnie*, a continuance panel denied this motion because *Bonnie* was the older case and thus needed to proceed first. (*Id.*). Petitioner opposed the continuance because, unlike the defendant in *Bonnie*, he was in custody pending the retrial. (*Id.*). Despite Petitioner's opposition, the trial court granted the State's motion due to the case's "extraordinary circumstances." (*Id.* at 4.). The trial court specifically cited the prosecutor's conflicting schedule as the main reason for delaying the retrial. (*Id.*). The trial court continued the matter until March 13, 2003. Petitioner's counsel soon moved for another continuance because certain letters written by Petitioner while in custody still needed to be translated. (Doc. #12, Exhibit RR.). The retrial began on March 25, 2003. (Doc. #12, Exhibit SS.). The State offered evidence including "[the translated letters] concerning several people involved in the events surrounding the murder . . . " that was not part of the original trial (*Id.* at 4.). The jury returned a guilty verdict and sentenced Petitioner to life in prison. (*Id.* at 5.).

## II. Review of Report and Recommendation

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114,1121 (9th Cir. 2003) (*en banc*) (emphasis in original); *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009) (the district court "must review de novo the portion's of the [Magistrate Judge's] recommendations to which the parties object.").

### A. Standard of Review and Exhaustion

The Petition in this case was filed under 28 U.S.C. § 2254 because Petitioner is incarcerated based on a state conviction. With respect to any claims Petitioner exhausted before the state courts, under 28 U.S.C. §§ 2254(d)(1) and (2) this Court must deny the Petition on those claims unless "a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law"[1] or was based upon an unreasonable determination of the facts. *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). Furthermore, this Court must presume the correctness of the state court's factual findings regarding a petitioner's claims. 28 U.S.C. § 2254(e)(1); *Ortiz v. Stewart*, 149 F.3d 923, 936 (9th Cir. 1998). If Petitioner failed to exhaust a claim before state courts, and is now barred

---

[1] In applying federal law, the state courts only need to act in accordance with Supreme Court case law. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003) ("In attempting to answer [whether the state court applied Federal law in an objectively reasonable manner], the only definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams* [*v. Taylor*], 529 U.S. [362], 412 [(2000)]. While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied. *See Williams*, 529 U.S. at 412 ("The ... statutory language makes clear ... that § 2254(d)(1) restricts the source of clearly established law to this Court's jurisprudence.")).

1 from exhausting the claim because the claim is in procedural default, this Court must decline
2 to reach the merits of that claim unless Petitioner shows cause and prejudice to excuse that
3 procedural default. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). However, "[a]n
4 application of habeas corpus may be <u>denied</u> on the merits, notwithstanding the failure of the
5 applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. §
6 2254(b)(2)(emphasis added).

"When applying these standards, the federal court should review the 'last reasoned decision' by a state court . . . ." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Accordingly, the summary denial of Petitioner's petition for review by the Arizona Supreme Court renders the Arizona Court of Appeal's decision on direct appeal the "last reasoned decision" of the state court, subject to this Court's review. *See Y1st v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("later unexplained orders upholding [a] judgment [rejecting a federal claim]" raises a presumption that the reviewing court "looks through" that order to the last reasoned decision).

As the R&R noted, Petitioner's life sentence creates an issue as to whether he needed to present his claims directly to the Arizona Supreme Court to exhaust them. R&R at 10-13. Several cases have created some ambiguity as to how a petitioner must properly exhaust a life sentence. For example, in *Swoopes v. Sublett*, the Ninth Circuit noted that "except in habeas petitions in life-sentence or capital cases, claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them." 196 F.3d 1008, 1010 (9th Cir. 1999).

The Magistrate Judge correctly reasoned that the *Swoopes*' decision is focused upon the specific facts of that case rather than a broad rule concerning exhaustion of federal habeas petitions. *See* R&R at 12. For example, in *State v. Sandon*, the Arizona Supreme Court spoke to this very issue by concluding that "[o]nce the defendant has been given the appeal to which he has a right, state remedies have been exhausted." 777 P.2d 220, 221 (Ariz. 1989). For these reasons, the Arizona Supreme Court does not have to directly review a Petitioner's claims when Petitioner receives a life sentence for those claims to be exhausted

for federal habeas purposes. Applied to the current facts, the Arizona Supreme Court's denial of review does not mandate a conclusion that Petitioner failed to exhaust his claims. Thus, the Court will consider whether Petitioner exhausted his claims with the Arizona Court of Appeals, and if appropriate, whether Petitioner succeeds on the merits.

### B. Petitioner's Theories for Habeas Relief

Petitioner raised three theories for habeas relief: 1) a speedy trial violation; 2) prosecutorial misconduct through a delay for tactical advantage; and 3) ineffective assistance of counsel pertaining to evidentiary matters during trial. Because Petitioner filed objections to the R&R's conclusion as to each of these claims, the Court will review the Petitioner's theories de novo.

#### 1. Speedy Trial Violations

First, Respondents argue Petitioner did not fully exhaust his state court remedies. On this point, the Magistrate Judge concluded that because Petitioner did not refer to any federal constitutional provisions or cases, he did not adequately present this challenge to the Arizona Court of Appeals:

> It is true that in his Petition for Review to the Arizona Supreme Court [ ] Petitioner expanded this claim to assert that "his constitutional right to a speedy trial was violated." However, Petitioner does not differentiate between the federal constitution's speedy trial right, and that provided under the Arizona Constitution. Ariz. Rev. State. Const. Art. 2 § 24 ("right . . . to have a speedy public trial"). [...] Moreover, even if Petitioner had properly presented a federal speedy trial claim to the Arizona Supreme Court, his failure to have previously presented it to the Arizona Court of Appeals precludes a finding that it was fairly presented. *Casey* [*v. Moore*], 386 F.3d [896], 916 [(9th Cir. 2004)].

R&R at 14-15. The record is not completely clear regarding Petitioner's failure to exhaust. Although the Arizona Court of Appeals denied the challenge on state law grounds, Petitioner cited federal authority (both *Barker v. Wingo*, 407 U.S. 514 (1972) and the Sixth Amendment) within his supplemental brief *in propria persona*.[2] (Doc. #12, Exhibit H, Supp. Brief at 5.). Because of this incongruity between the R&R and the Petitioner's supplemental

---

[2] Petitioner's counsel filed an *Anders* Brief with the Arizona Court of Appeals to allow Petitioner to file a supplemental brief *in propria persona*. (Doc. #12, Exhibit E at 8.).

- 5 -

brief, the Court will, for the purposes of this Order, analyze this challenge on the merits.

This Court must consider four factors in determining whether there has been a speedy trial violation. *Barker*, 407 U.S. at 530 (1972). These factors are: 1) the length of the pretrial delay; 2) the reason for the delay; 3) whether defendant asserted his speedy trial right; and 4) prejudice to the defendant. *Id.* No single factor is required or necessary to support a finding that a violation of the constitutional right to a speedy trial has occurred. *Id.* at 522. Instead, the Court must consider these factors together. *Id.*

First, the *Barker* Court noted the flexible standards involving the length of pretrial delay factor:

> The length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.

407 U.S. at 530-31. Ultimately, the Court agrees with the R&R's conclusion that the length in delay does not weigh in the Petitioner's favor. The delay between the Petitioner's first and second trials lasted "a little over three months." R&R at 23. Furthermore, the State was not fully responsible for these delays. As the R&R provides, the State's motion for continuance caused a 38-day delay. R&R at 22. Petitioner's counsel was ultimately responsible for the 11-day delay from March 13 to March 24. R&R at 22. For these reasons, the delay was neither excessive nor arbitrary, and therefore, this factor does not favor Petitioner. *See e.g. U.S. v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003) (22-month delay not excessively long); *U.S. v. Tahn Huu Lam,* 251 F.3d 852, 856 (9th Cir. 2001) (15-month delay only weighted slightly in defendant's favor).

Second, the State moved to continue the retrial because the prosecutor was scheduled in two trials simultaneously. (Doc. #12, Exhibit J, Mem. Dec. at 3.). Although the State could inevitably build its case during this delay, the Petitioner has not demonstrated the State's intent to gain an improper tactical advantage. First, the prosecutor attempted to continue the *Bonnie* trial, but the continuance panel denied this motion because *Bonnie* was

the older case. (Doc. #12, Exhibit QQ at 1.). Second, the prosecutor cannot and should not be expected to conduct two trials simultaneously. Third, the trial court concluded that "extraordinary circumstances" justified a continuance (*Id.*).

Furthermore, even if the Court accepts Petitioner's argument that the State gained evidence because of the delay, this purported harm does not rise to the level necessary to sustain a federal constitutional challenge. The trial court did not impede Petitioner's ability to present key defenses or evidence. For example, Petitioner did not lose key witness testimony because of death or inability to "recall accurately events of the distant past." *Barker*, 407 U.S. at 532. Petitioner's counsel possessed ample opportunity, especially after Petitioner's motion for continuance, to counter any additional evidence obtained and submitted by the State during the delay.

Third, Petitioner opposed the State's motion for continuance. (Doc. #12, Exhibit QQ at 1.). Although Petitioner's counsel did, in fact, file for the last continuance, this act does not eliminate his opposition to the State's motion. For the purposes of federal speedy trial rights, this factor weighs in favor of Petitioner as to the 38-day delay caused by the State (Petitioner agreed to all other continuances).

Last, Petitioner claims he can show actual prejudice from the continuance because the State took additional steps to prepare its case during the delay. (Doc. #16 at 5, ¶ 2.). It is true that the State was able to use additional evidence not available during the first trial, including a letter Petitioner wrote while in custody. As the Magistrate Judge correctly documented, however, Petitioner's counsel eventually stipulated to the letter's admission:

> [T]he stipulation to admission and attribution of the letters would have left issues of Petitioner's gang membership "relevant for the foundation for the admissibility of the letter." (Exhibit T, M.E. 1/9/7 at 3.). Thus, the stipulation was not merely an acceptance of an improperly gained admissibility, but a tactically sound alternative to a full-blown fight over the attribution of the letters by other means which may have highlighted Petitioner's gang connections.

R&R at 24, ¶ 1. Furthermore, even if Petitioner's counsel had not stipulated to the evidence, prejudice does not exist. "[I]nability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is

1 obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past." *Barker*, 407 U.S. at 532. The record does not suggest any of these scenarios nor does Petitioner assert this type of prejudice. Despite the 38-day delay, Petitioner was able to present his defenses to the jury.

For these reasons, the Court finds that the pre-trial delay did not violate the Petitioner's federal constitutional right to a speedy trial. First, the length and reasons for delay both factor against Petitioner. Second, despite the availability of new evidence for the State, these admissions did not prejudice Petitioner. Petitioner was still able to defend against the State's allegations, even though he was ultimately unsuccessful. Petitioner is not entitled federal habeas relief on his claim of a speedy trial violation. Therefore, even though the state court relied on state law, this Court finds that its decision on this issue was not contrary to, nor an unreasonable application of clearly established federal law.

### 2. Prosecutorial Misconduct through Delay for Tactical Advantage

Respondents argue Petitioner did not properly exhaust his claim of prosecutorial misconduct and thus it is procedurally defaulted. (Doc. #12 at 29.). In Petitioner's supplemental brief *in propria persona*, however, he alleged a violation of the Due Process clause (*Id.*, Exhibit H, Supp. Brief at 16.). Petitioner specifically complained that the prosecutor's delay of the retrial allowed the State to improperly obtain evidence. (*Id.* at 17.). For purposes of this order, the Court will deem this claim exhausted and reach its merits

First, Petitioner asserts that after the parties had set a firm date for the retrial, "the State was granted a second order to obtain handwriting samples from the Petitioner. The State for a second time failed to take those steps and moved for a continuance two weeks before the retrial claiming a scheduling conflict." (Doc. #3 at 7.). Second, Petitioner argues that the lead detective never followed through with the handwriting analysis, and despite the prosecutor's concession of this fact, the trial court wrongfully allowed the State to continue the analysis during the delay. (*Id.* at 3.). Therefore, in addition to alleging due process violations by this evidence's admission, Petitioner argues that "the State falsely accused and blamed [him] for the . . . undue delay." (*Id.* at 7.).

When evaluating allegations of prosecutorial misconduct, federal courts must distinguish between the "ordinary error of a prosecutor and [the] sort of egregious misconduct" that "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Claims of misconduct by prosecutors amounting to an alleged violation of substantive due process are found only if the States's conduct "violates fundamental fairness and is shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment." *United States v. Hernandez*, 388 F.3d 1199, 1238 (9th Cir. 2004) (citation omitted). Furthermore, in order to grant relief, this Court must find that the misconduct "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). For the following reasons, Petitioner is unable to demonstrate he is entitled to relief on this claim.

The record directly contradicts many of Petitioner's allegations of prosecutorial misconduct. He argues the State intentionally delayed obtaining handwriting samples to gain an advantage during trial. (Doc. #3 at 3.). In particular, Petitioner assumes the State would have been unable to introduce the in-custody letter without a trial delay. (Doc. #16 at 5.). This assumption is incorrect. First, the trial court noted the State's diligence in obtaining the handwriting samples. As the trial court judge correctly noted, Petitioner significantly burdened the State's efforts to obtain the samples:

> The Court finds that the State has acted diligently in its efforts to obtain handwriting exemplars from the [Petitioner] ordered by the Court in November and again in December 2002. The State's efforts were thwarted by [Petitioner]'s failure to submit. Finally, in February 2003, prior to [Petitioner] submitting to the exemplar, Defense [C]ounsel stipulated that the letters in question are in [Petitioner]'s handwriting . . . .

(Doc. #12, Exhibit RR at 2.). Likewise, the prosecutor initially objected to the continuance. The record conclusively demonstrates the prosecutor's attempt to continue *Bonnie* rather than Petitioner's retrial. (*Id.*, Exhibit QQ at 1.). The continuance panel denied this motion because *Bonnie* was the older case and needed to proceed first. (*Id.*).

Second, Petitioner's counsel eventually stipulated to the letter's admission. Even if

- 9 -

the prosecutor had wrongfully delayed Petitioner's trial to obtain evidence, this stipulation overcomes any alleged prejudice. Such a stipulation supports the evidence's relevance and therefore Petitioner cannot effectively demonstrate fundamental unfairness within the trial process. Furthermore, the State's evidence was not solely limited to this letter. Two eyewitnesses testified they watched Petitioner walk up to the victim, put a gun to the left side of his head, and shoot the victim. (Doc. #12, Exhibits R.T. 3/26/03, at 87-88, 107, 110; VV, R.T. 4/01/03, at 41, 57, 98.). Even assuming that the prosecution should have been prohibited from introducing Petitioner's letter, the State possessed alternative evidence to argue on the merits. For these reasons, Petitioner is unable to demonstrate an injurious effect nor prosecutorial conduct shocking to the universal sense of justice. The Court therefore denies Petitioner's claim for relief based on prosecutorial misconduct.

### 3. Ineffective Assistance of Counsel

Because Respondents concede exhaustion, the Court will analyze Petitioner's claim of ineffective assistance of counsel on the merits. (Doc. #12 at 33.). In total, Petitioner presents three arguments why his representation was deficient: 1) counsel improperly stipulated to the admission of a letter he wrote while in custody; 2) counsel failed to proffer a certain jury instruction; and 3) counsel did not challenge the court interpreter's translation. (Doc. #3 at 19.).

Under *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny, "[a]n ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. To establish deficient performance, a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (internal citations and quotations omitted). A deficient performance is one that is "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. In order to show prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* at 694. Without specifics that cause the court to have such doubts, a claim of ineffective assistance of counsel must be denied. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). For the following reasons, the Court rejects Petitioner's claims of ineffective assistance of counsel. Petitioner has not established either of *Strickland's* two prongs.

### a. Stipulation for Attribution

The Court agrees with the R&R's conclusion that the stipulation for attribution does not affirmatively demonstrate ineffective assistance of counsel. Several relevant Ninth Circuit cases explore the boundaries and characteristics of ineffective counsel. For example, "[m]ere criticism [by the defendant] of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation." *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980).

Applied to the current facts, Petitioner's counsel stipulated to the attribution of several letters obtained by the State while Petitioner was in custody. Ultimately, the trial court allowed the State to introduce one of these letters because its statements "concern[ed] several people involved in the events surrounding the murder . . . ." (Doc. #12, Exhibit J, Mem. Dec. at 3.). As a threshold matter, Petitioner does not contest the letter's authorship or whether the handwriting analysis would have successfully determined his authorship. Instead, he simply argues that his counsel's decision to stipulate was unreasonable. As the record indicates, Petitioner initially refused to cooperate with the State's attempt to obtain handwriting analysis while in custody. (Doc. #12, Exhibit J, Mem. Dec. at 9-10.). Given the choice between a stipulation or additional delays for handwriting analysis, the Court cannot find counsel's strategy to be unreasonable.

Furthermore, Petitioner obtained a clear strategic benefit through the stipulation. The trial court described this benefit:

> Had the State been required to establish the foundation without handwriting exemplars, it may have relied upon the unique gang characteristics and its reference to the details of Defendant's case. Without the stipulation, evidence of Defendant's gang membership would have been relevant for the foundation for the admissibility of the letter.

(Doc. #12, Exhibit T at 3.). By stipulating to the letter's authorship, Petitioner's counsel

avoided additional trial delays and also prevented the State from admitting evidence affirmatively demonstrating Petitioner's gang membership. Because this stipulation served a legitimate strategic purpose and provided a substantive benefit, Petitioner is unable to demonstrate counsel's unreasonableness.

Petitioner also notes his counsel's attempt to retract the agreed upon stipulation. (Doc. #3 at 5.). Petitioner asserts that this attempt somehow demonstrates prejudice because counsel may have believed that the letter's purported gang references would have inevitably rendered the document inadmissable despite the parties' stipulation. (*Id.*). As the R&R correctly notes, however, the Court "need not determine the actual reason for an attorney's actions, as long as the act falls within the range of reasonable representation." R&R at 27 (citing *Morris* [*v. California*], 966 F.2d [448], 456-57 [(9th Cir. 1991)].). For these reasons, the Court finds counsel's stipulation does not demonstrate ineffective assistance of counsel.

### b. **Jury Instruction**

The Court also agrees with the R&R's conclusion that Petitioner is unable to demonstrate ineffective counsel through the trial court's jury instructions. As the R&R indicates, Petitioner is not challenging the legitimacy of the instructions. R&R at 29. Rather, he is asserting that counsel did not do enough to obtain favorable instructions regarding the in custody letter. R&R at 29. Both parties agreed to the stipulated evidence and therefore the trial court possessed authority to tailor the jury instruction to admitted evidence. Furthermore, the trial court would have likely rejected any instructions not taking into account this evidence. Because counsel is not expected to raise meritless legal arguments, *See Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982), Petitioner's attorney was not under any obligation to submit alternative jury instructions regarding the introduced letter. For these reasons, the Court rejects Petitioner's claim of ineffective assistance of counsel related to the jury instructions.

### c. **Stipulation to Translation**

Finally, the Court agrees with the R&R's conclusion that Petitioner is unable to demonstrate ineffective assistance of counsel through the translation stipulation. The R&R

accurately recounts Petitioner's objection:

> Petitioner complained to the [Post-Conviction Relief] court that the translation interpreted the opening of the letter as "Dear Bro, I waited for you on Thursday caus [*sic*] I finally secured the police report." (Exhibit R, PCR Pet. at Exh. A, Supplement at 17 (emphasis in original.)). Petitioner argued that the translation should have been "Dear Carnal, I waited for you on Thursday cause [*sic*] I finally received the police report." (*Id.* (emphasis in original).).

R&R at 28-29. First, the record does not suggest that the stipulated translation prejudiced Petitioner in any way. Petitioner's objection to the small variation in language would not have influenced the jury determination in a murder trial. Furthermore, this translation may have ultimately benefitted Petitioner. Similar to the attribution stipulation, counsel's discretion likely prevented the State from introducing evidence of Petitioner's gang affiliations. Because Petitioner's gang affiliations may have indicated a violent background and ultimately influenced the jury, counsel's stipulation served a legitimate strategic purpose. For these reasons, the Court rejects Petitioner's ineffective assistance of counsel claim involving the letter's translation.

### d.     Summary

Petitioner has failed to demonstrate that his counsel's performance was deficient. His arguments are without merit and therefore cannot meet the *Strickland* requirements.[3] The Court denies relief on Petitioner's claim of ineffective assistance of counsel.

### III.    Conclusion

**IT IS ORDERED** that the Report and Recommendation is accepted and adopted (Doc. #15), the objections are overruled (Doc. #16), the Petition in this case is denied with prejudice, and the Clerk of the Court shall enter judgment accordingly.

---

[3] Even assuming Petitioner's counsel was actually deficient, the Court notes his likely inability to demonstrate any prejudicial effect. For example, two eyewitnesses testified they watched Petitioner shoot the victim. (Exhibits R.T. 3/26/03, at 87-88, 107, 110; VV, R.T. 4/01/03, at 41, 57, 98.). Therefore, the State may have obtained a conviction even without Petitioner's letter. The Court, however, does not need to reach the second *Strickland* prong because Petitioner is unable to demonstrate deficient representation.

**IT IS FURTHER ORDERED** that pursuant to Rule 11 of the Rules Governing Section 2254 cases, in the event Petitioner files an appeal, the Court denies issuance of a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

DATED this 18th day of June, 2010.

/s/ James A. Teilborg
James A. Teilborg
United States District Judge